UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
M.G. and K.G., individually and on behalf of N.G.,

                                   Plaintiffs,          **OPINION & ORDER**

      - against -                              No. 23-CV-9742 (CS)

RYE CITY SCHOOL DISTRICT,

                                Defendant.
-------------------------------------------------------------x

Appearances:

William DeVinney
Briglia Hundley, PC
Tysons Corner, Virginia
*Counsel for Plaintiffs*

Alessandra P. Pulit
Ingerman Smith, L.L.P.
Harrison, New York
*Counsel for Defendant*

Seibel, J.

      Before the Court is the motion of Defendant Rye City School District (the "District") to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 13.) Plaintiffs bring this case pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482,[1] Article 89 of the New York Education Law, N.Y. Educ. Law § 4401, *et seq.*, and Part 200 of the New York State Education Department Rules and Regulations, 8 N.Y.C.R.R. § 200.1, *et seq.* (*See generally* ECF No. 1 ("Compl.").)

      For the following reasons, Defendant's motion is GRANTED.

---

[1] The IDEA was amended in 2004 by the Individuals with Disabilities Education Improvement Act, Pub. L. No. 108–446, 118 Stat. 2647, but cases discussing the IDEA remain authoritative.

I.  **BACKGROUND**

   A. **IDEA Framework**

"The IDEA requires States receiving federal funds to provide 'all children with disabilities' with a FAPE,"[2] which includes "'special education and related services' tailored to meet the unique needs of a particular child." *Mr. P v. W. Hartford Bd. of Educ.*, 885 F.3d 735, 741 (2d Cir. 2018) (first quoting 20 U.S.C. § 1412(a)(1)(A); then quoting *id.* § 1401(9)).[3] Related services include "transportation, and such developmental, corrective, and other supportive services . . . as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(26)(A). New York must comply with the IDEA's requirements because it receives federal funds under the statute. *See Khanimova v. Banks*, No. 23-CV-4124, 2024 WL 2093470, at *1 (S.D.N.Y. May 9, 2024).

Under the IDEA, states must "provide each disabled child with an individualized education program ('IEP')." *Id.* (citing 20 U.S.C. § 1414(d)(1)(A)). "The IEP is 'the centerpiece of the [IDEA's] education delivery system for disabled children.'" *Mr. P*, 885 F.3d at 741 (quoting *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 391 (2017)). An IEP is "a written statement that sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Khanimova*, 2024 WL 2093470, at *1. The IEP must be developed annually by "[a] school official qualified in special education, the child's teacher, the child's parents, and, where

---

[2] "FAPE" is short for a "free appropriate public education."

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

2

appropriate, the child." *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998). "A school district meets its obligations to provide a FAPE by creating an IEP that is developed in compliance with the IDEA's procedural and substantive requirements." *N.B. v. N.Y. City Dep't of Educ.*, 711 F. App'x 29, 32 (2d Cir. 2017) (summary order).

Under the IDEA, states must create and maintain "'an administrative review process for parents who are dissatisfied with their child's education and wish to challenge the adequacy of the child's IEP.'" *Polanco v. Porter*, No. 21-CV-10927, 2023 WL 2751340, at *1 (S.D.N.Y. Mar. 31, 2023) (quoting *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 525-26 (2d Cir. 2020)). "New York's regulations implementing the goals of the IDEA 'appear to track the IDEA closely.'" *P.C. v. Rye City Sch. Dist.*, 232 F. Supp. 3d 394, 408 (S.D.N.Y. 2017) (quoting *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 363 (2d Cir. 2006)); *see* N.Y. Educ. Law §§ 4401 to 4410-b. Parents are entitled to challenge "any matter relating to the identification, evaluation or educational placement of the student or the provision of a [FAPE] to the student." N.Y. Educ. Law § 4404(1); *see* 20 U.S.C. § 1415(b)(6)(A) (to the same effect). New York "has implemented a two-tier system of administrative review, under which dissatisfied parents may (1) file an administrative due process complaint and request a hearing before an impartial hearing officer ('IHO') and (2) appeal the IHO's decision to a state review officer ('SRO')." *Polanco*, 2023 WL 2751340, at *1. Once this administrative process is exhausted, a party may file a civil action in federal or state court challenging the administrative decision. *See Khanimova*, 2024 WL 2093470, at *1 (first citing 20 U.S.C. § 1415(i)(2)(A); then citing N.Y. Educ. Law § 4404(3)); *Polanco*, 2023 WL 2751340, at *1 (to the same effect).

B. **Facts**

The Court presumes the parties' familiarity with the underlying administrative proceedings and sets forth only the facts necessary for its decision.

N.G. is a former student in the District who suffers from several disabilities, rendering N.G. eligible for services under the IDEA. (Compl. ¶¶ 15, 19-20.) On June 18, 2021, Plaintiffs filed a due process complaint, alleging that the District failed to offer N.G. a FAPE for the 2019-2020 and 2020-2021 school years. (*Id.* ¶ 47.) On December 1, 2021, the IHO issued an interim decision granting the District's motion to dismiss claims addressed to the 2019-2020 school year as barred by *res judicata*. (*Id.* ¶¶ 48-49.) The IHO then held seven days of hearings on Plaintiffs' remaining due process claims. (*Id.* ¶ 50). On April 16, 2023, the IHO issued an opinion denying Plaintiffs' requested relief. (*Id.* ¶ 51; ECF No. 14-3.)

Plaintiffs appealed the IHO's decision to the SRO. (Compl. ¶ 52.) Such appeals must be served upon the opposing party within forty days after the date of the IHO decision. (8 N.Y.C.R.R. § 279.4; *id.* § 279.13.) The parties agree that that date was May 26, 2023. (*See* ECF No. 15 ("D's Mem.") at 8 ("The deadline for Plaintiffs to serve their appeal upon the District was May 26, 2023.")); ECF No. 16 ("Ps' Opp.") at 1 ("For Plaintiffs, forty days from the appealed decision fell on Friday, May 26, 2023.").) While Plaintiffs allege that they "completed their appeal on May 26, 2023," (Compl. ¶ 53), the District was closed on that date, "making personal service impossible," (*id.* ¶ 56). Plaintiffs allege that May 26, 2023 – the Friday before Memorial Day – was a holiday and thus Plaintiffs' "appeal was due on the first business day after May 26, 2023, which was May 30, 2023." (*Id.* ¶ 57.) Their Request for Review ("RFR"), dated May 30, 2023, was received by the District on that date. (ECF No. 14-4.) On July 6, 2023, the SRO

4

dismissed Plaintiffs' appeal as untimely under New York's regulations.  (Compl. ¶¶ 58-59; *see also* ECF No. 14-2 ("SRO Decision") at 6-7.)

### C. Procedural History

On November 3, 2023, Plaintiffs brought this action, challenging the SRO's decision to dismiss Plaintiffs' appeal as untimely and the IHO's decision on the merits of their due process claims.  (*See generally* ECF No. 1.)  On January 26, 2024, the Court held a pre-motion conference and set a briefing schedule for the District's motion to dismiss.  (*See* Minute Entry dated. Jan. 26, 2024.)  The instant motion followed.

## II. LEGAL STANDARD

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on other grounds on reh'g en banc*, 585 F.3d 559 (2d Cir. 2009).  "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Id.*; *see Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "When a defendant moves to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and also moves to dismiss on other grounds, the Court usually must consider the Rule 12(b)(1) motion first." *Al-Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d 118, 123 (S.D.N.Y. 2021) (citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).  "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff[s], but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008),

5

*aff'd on other grounds*, 561 U.S. 247 (2010).  Further, in making its determination on jurisdiction, "a district court . . . may refer to evidence outside the pleadings."  *Makarova*, 201 F.3d at 113; *see Arar*, 532 F.3d at 168.

Because I find that the Court lacks subject matter jurisdiction, as explained below, I need not detail the familiar standards governing motions to dismiss for failure to state a claim.

### III.   DISCUSSION

The District argues that Plaintiffs' untimely appeal to the SRO amounts to a failure to exhaust their administrative remedies, and thus the Court lacks subject matter jurisdiction over this action.  (*See* D's Mem. at 1, 4-9.)  Plaintiffs argue that the SRO miscalculated the deadline to serve their appeal, and thus they timely served their appeal on the District on May 30, 2023, in accordance with the relevant state regulations.  (*See* Ps' Opp. at 1, 4-5.)

It is well settled that an aggrieved party must exhaust the administrative remedies available under the IDEA before filing a federal lawsuit, and "[f]ailure to exhaust administrative remedies deprives the court of subject matter jurisdiction."  *Polanco*, 2023 WL 2751340, at *4.  "[P]rocedural errors, such as failure to timely serve or file a petition for SRO review, will be deemed a failure to exhaust administrative remedies."  *Id.* (collecting cases); *see Avaras v. Clarkstown Cent. Sch. Dist.*, No. 18-CV-6964, 2019 WL 4600870, at *10 (S.D.N.Y. Sept. 21, 2019) (collecting cases).  "To initiate an appeal from the IHO's decision to the SRO, state regulations require the petitioning party to effectuate timely personal service of a verified petition upon the respondent."  *Khanimova*, 2024 WL 2093470, at *3.  A party seeking review of an IHO's decision must "personally serve a notice of request for review and a request for review upon the opposing party (respondent) within 40 days after the date of the decision of the

impartial hearing officer sought to be reviewed." 8 N.Y.C.R.R. § 279.4.  Section 279.11 provides the method of calculating the time to serve the RFR:

> **Section 279.11 Computation of days within which service must be made**
>
> (a) Unless specifically stated otherwise, the term days, as used in this Part, shall mean calendar days.
>
> (b) The date upon which personal service of the request for review was made upon the respondent shall be excluded in the computation of the period in which service of the answer or answer and cross-appeal must be made. If the answer or answer and cross-appeal has been served by mail upon petitioner or petitioner's counsel, three days shall be added to the period in which an answer to the cross-appeal or a reply may be served and filed pursuant to this Part. If the last day for service of any paper permitted under this Part falls on a Saturday or Sunday, service may be made on the following Monday; and if the last day for such service falls on a legal holiday, service may be made on the following business day.

8 N.Y.C.R.R. § 279.11

Here, the IHO rendered its decision on April 16, 2023, (*see* SRO Decision at 4; Compl. ¶ 51), and as a result, the deadline to serve the request for review fell forty days later on Friday, May 26, 2023.  Because Plaintiffs served "the Secretary to the Chief School Officer" on May 30, 2023 – several days after May 26, 2023 – the SRO concluded that Plaintiffs' RFR was untimely.  (SRO Decision at 6.)[4]  Plaintiffs do not dispute that May 26, 2023, is forty calendar days after the IHO's decision.  (*See* Ps' Opp. at 1; *see also* Compl. ¶¶ 54-57.)  Rather, Plaintiffs argue that the District closed its offices on May 26, 2023, to celebrate Memorial Day and thus that date constituted a "legal holiday" under 8 N.Y.C.R.R. § 279.11(b).  (*See* Ps' Opp. at 1, 3, 5.)  Plaintiffs therefore contend that they timely served their appeal on Tuesday, May 30, 2023 – the next business day after Memorial Day.  (*See id.*)

---

[4] While unaddressed by the parties, the SRO also stated in a footnote that Plaintiffs' service of the appeal was also defective because they served an individual that the District did not designate to accept service. (SRO Decision at 6 n.6).

An SRO, exercising his or her discretion, "may dismiss *sua sponte* a late request for review" or "may excuse a failure to timely serve or file a request for review within the time specified [under 8 N.Y.C.R.R. § 279.4] for good cause shown."  8 N.Y.C.R. § 279.13; *see Khanimova*, 2024 WL 2093470, at *3.  "[G]ood cause for late filing is something like postal service error, or, in other words, an event over which the filing party had no control."  *Polanco*, 2023 WL 2751340, at *5.  "If a petitioner fails to timely initiate an appeal to the SRO, the reasons for failure to timely seek review must be set forth in the petition."  *Khanimova*, 2024 WL 2093470; *see* 8 N.Y.C.R.R. § 279.13.  When "an SRO dismisses a petition for review as untimely, courts will uphold the decision unless that decision was 'arbitrary and capricious.'"  *Polanco*, 2023 WL 2751340, at *4; *see Avaras*, 2019 WL 4600870, at *10 (same); *T.W. v. Spencerport Cent. Sch. Dist.*, 891 F. Supp. 2d 438, 440 (W.D.N.Y. 2012) (to the same effect).  To determine whether the SRO's decision was "arbitrary and capricious," courts must consider "whether the decision was based on consideration of relevant factors and whether there has been a clear error of judgment."  *Khanimova*, 2024 WL 2093470, at *3.  While the arbitrary and capricious standard "requires consistency in agencies' application of law" to ensure identical treatment of parties in identical circumstances, parties are rarely completely identical, and thus "the rule is a rule of reasonableness."  *Avaras*, 2019 WL 4600870, at *11.

Here, the SRO determined that Plaintiffs' request for review was untimely because they did not serve the District by May 26, 2023.  (SRO Decision at 6.)  The SRO also noted that Plaintiffs "have failed to assert good cause – or any reason whatsoever – in their request for review for the failure to timely initiate the appeal from the IHO's decision," thus providing "no basis on which to excuse the parents' failure to timely appeal the IHO's decision."  (*Id.*)

8

Because Plaintiffs did not timely serve the District and did not assert good cause as to why the SRO should excuse late service in its discretion, the SRO dismissed the appeal. (*Id.* at 7.)

This decision was not arbitrary and capricious. With respect to the SRO's discretion to excuse untimely service for good cause, 8 N.Y.C.R.R. § 279.13 explicitly requires that the reasons for failing to timely serve an appeal must be set forth in the RFR, but Plaintiffs did not do so. Plaintiffs apparently knew that the school would be closed on May 26, 2023, (*see* ECF No. 14-5 (N.G.'s mother went to school offices on May 26, 2023, to "confirm" that she could not serve District that day); ECF No. 18-3 (District calendar designating May 26, 2023 as "Snow/Emergency Make-up Day")), and when their lawyer realized that service would have to be made on Tuesday, May 30, 2023, he updated the RFR to reflect that date, (ECF No. 17 ¶¶ 6-8). Yet no request for a good-cause extension or even any explanation was included in the updated RFR. Moreover, when the District raised the untimeliness issue in its Answer, (ECF No. 18-1), and its memorandum of law in support, (ECF No. 18-2), Plaintiffs did not respond,[5] again leaving the SRO with no basis to find good cause. In light of this failure, "it cannot be said that the SRO erred in dismissing the petition as untimely." *Keramaty on behalf of R.M.K. v. Arlington Cent. Sch. Dist.*, No. 05-CV-6, 2006 WL 8461781, at *14 (S.D.N.Y. Jan. 25, 2006) (SRO properly dismissed appeal where plaintiff did not provide to SRO explanation for one-day

---

[5] Plaintiffs argue that the applicable regulations did not permit them to file a reply addressing the District's untimeliness argument. (*See* Ps' Opp. at 3 & n.2.) They are incorrect. Section 279.6 permits plaintiffs to file "a reply . . . to any procedural defenses interposed in an answer . . . ." 8 N.Y.C.R.R. 279.6(a). Failing to timely serve a petition for SRO review is a procedural error. *See, e.g., Polanco*, 2023 WL 2751340, at *4; *J.E. v. Chappaqua Cent. Sch. Dist.*, No. 14-CV-3295, 2015 WL 4934535, at *4 (S.D.N.Y. Aug. 17, 2015). That Plaintiffs incorrectly interpreted the regulation was not beyond their control, *see Polanco*, 2023 WL 2751340, at *5, and does not itself constitute good cause to excuse their failure to raise good cause before the SRO. They concede as much, arguing that "whether Plaintiffs should be excused from missing the deadline" is not an issue before this Court, (Ps' Opp. at 6), relying instead on their argument (discussed below) that May 26, 2023, was a legal holiday.

9

delay in filing); *B.C. ex rel B.M. v. Pine Plains Cent. Sch. Dist.*, 971 F. Supp. 2d 356, 367 (S.D.N.Y. 2013) ("[T]hough the SRO, in its discretion, might consider whether a party has suffered prejudice, the regulations require a showing of good cause to excuse untimeliness – and here, Plaintiff provided none."); *R.S. v. Bedford Cent. Sch. Dist.*, 899 F. Supp. 2d 285, 291 (S.D.N.Y. 2012) ("Most notably, [Plaintiffs] cite no case in which a late service was excused without any showing of good cause whatsoever – a showing the statute explicitly requires.").

Nor have Plaintiffs shown that the SRO's decision is inconsistent with other SROs' decisions to dismiss appeals as untimely. *See, e.g.*, *Application of a Student with a Disability*, Appeal No. 16-014 (Apr. 8, 2016), https://www.sro.nysed.gov/decision/2016/16-014 (last visited Jan. 28, 2025) (district offices' closure for winter break and unavailability of district clerk did not excuse untimely service); *Application of a Student with a Disability*, Appeal No. 21-061 (Apr. 5, 2021), https://www.sro.nysed.gov/decision/2021/21-061 (last visited Jan. 28, 2025) (dismissing appeal where service due date was miscalculated); *Application of the N.Y.C. Dept. of Educ.*, Appeal No. 08-139 (Jan. 28, 2009), https://www.sro.nysed.gov/decision/2008/08-139 (last visited Jan. 28, 2025) (process server's attempt to serve wrong address and completion of service at proper address two days past deadline did not establish good cause). While the SRO's decision may seem "harsh given the *de minimis* nature of the delay . . . the arbitrary and capricious standard mandates considerable deference to SROs." *Avaras*, 2019 WL 4600870, at *11 (upholding SRO's dismissal of appeal as untimely where plaintiff served school district nine hours past deadline); *see, e.g., R.S.*, 899 F. Supp. 2d at 288–89 (plaintiff failed to exhaust administrative remedies, depriving the court of subject matter jurisdiction, where counsel was timely served but school district itself served one day after deadline); *Kelly ex rel. M.K. v. Saratoga Springs City Sch. Dist.*, No. 09-CV-276, 2009 WL 3163146, at *5 (N.D.N.Y. Sept. 25,

10

2009) (plaintiffs who filed their petition to SRO three days late failed to exhaust administrative remedies).

In short, "[w]hile the Plaintiffs now present[] the Court with an explanation for [their] delay in filing, having failed to do so in the proceedings before the SRO, it cannot be said that the SRO erred in dismissing the petition as untimely." *Keramaty*, 2006 WL 8461781, at *14.

Perhaps recognizing as much, Plaintiffs do not argue that their late filing should be excused; rather, they contend that it was not late. (*See* Ps' Opp. at 6 ("[T]he issue is not whether Plaintiffs should be *excused* from missing the deadline, but whether the deadline was, in fact, on May 26, 2023, or May 30, 2023.") (emphasis in original).) They rely on the argument that May 26, 2023, was a legal holiday. (*See id.* at 7.) Even if they had not waived this argument by failing to raise it before the SRO, *see Phillips v. Banks*, 656 F. Supp. 3d 469, 483 (S.D.N.Y. 2023) (claim abandoned where SRO not alerted to need to review the issue), *aff'd*, No. 23-362, 2024 WL 1208954 (2d Cir. Mar. 21, 2024); *NB & CB v. N.Y.C. Dep't of Educ.*, No. 15-CV-4948, 2016 WL 5816925, at *4 (S.D.N.Y. Sept. 29, 2016) ("well settled that a party's failure to raise an argument during administrative proceedings generally results in a waiver of that argument"), *aff'd sub nom. N.B. v. N.Y.C. Dep't of Educ.*, 711 F. App'x 29 (2d Cir. 2017), I would be dubious.

May 26, 2023, the Friday before Memorial Day and a date that the District's offices were closed, was not a "legal holiday" under the New York regulations. While 8 N.Y.C.R.R. § 279.11(b) does not explicitly define the term "legal holiday," New York's General Construction Law § 24 defines "public holidays" as follows:

> The term public holiday includes the following days in each year: the first day of January, known as New Year's day; the third Monday of January, known as Dr. Martin Luther King, Jr. day; the twelfth day of February, known as Lincoln's birthday; the third Monday in February, known as Washington's birthday; the last

11

>Monday in May, known as Memorial day; the second Sunday in June, known as Flag day; the nineteenth day of June, known as Juneteenth; the fourth day of July, known as Independence day; the first Monday in September, known as Labor day; the second Monday in October, known as Columbus day; the eleventh day of November, known as Veterans' day; the fourth Thursday in November, known as Thanksgiving day; and the twenty-fifth day of December, known as Christmas day, and if any of such days except Flag day is Sunday, the next day thereafter; each general election day, and each day appointed by the president of the United States or by the governor of this state as a day of general thanksgiving, general fasting and prayer, or other general religious observances. The term half-holiday includes the period from noon to midnight of each Saturday which is not a public holiday.

N.Y. Gen. Constr. Law § 24.  Plaintiffs contend that this definition is inapplicable because 8 N.Y.C.R.R. § 279.11(b) uses the term "legal holiday" rather than "public holiday."  (*See* Ps' Opp. at 5.)  This argument is unpersuasive.  Both New York state and federal courts have treated the terms "legal holiday" and "public holiday" interchangeably for purposes of § 24.  *See, e.g.*, *Madison Plaza Com. Owners, LLC v. EB Leasing, LLC*, 958 N.Y.S.2d 61, 61 (App. Term 2010) (*per curiam*) ("In this regard we note that the third calendar day after the process was mailed was a legal holiday (*see* General Construction Law § 24). . . ."); *Hall v. Leonard*, 23 N.Y.S.2d 360, 364 (1st Dep't 1940) ("Furthermore, May 11th was not one of the legal holidays or half-holidays specified in Section 24 of the General Construction Law."); *Jesa Med. Supply, Inc. v. Am. Transit Ins. Co.*, 905 N.Y.S.2d 842, 843 (N.Y. Sup. Ct. 2010) (referring to President's Day as "being a legal holiday"); *Pantaleoni v. City of Rome*, 484 N.Y.S.2d 409, 410 (N.Y. Sup. Ct. 1984) ("September 3 was Labor Day, a legal holiday.  Thus, under Section 25-a of the General Construction Law, the final day for filing a notice of claim was September 4."); *Sher v. City of N.Y.*, No. 21-CV-1339, 2022 WL 1294395, at *3 n.4 (S.D.N.Y. Apr. 29, 2022) ("If a statute of limitations expires on a weekend or legal holiday, both New York law and Federal law instead end the statute of limitations period on the next day that is not a weekend or holiday."); *Domazet v. Willoughby Supply Co., Inc.*, No. 14-CV-1455, 2015 WL 4205279, at *2 (N.D.N.Y. July 10,

2015) (noting similarities in definition of "public holiday" under N.Y. Gen. Constr. Law § 24 and "legal holiday" under Fed. R. Bankr. P. 9006(a)(6)); *Gagliardo v. Arlington Cent. Sch. Dist.*, 373 F. Supp. 2d 460, 464 (S.D.N.Y. 2005) (court considered whether deadline to serve appeal fell on "Columbus Day (a legal holiday, which would have given the parents an additional day)"); *Harrison v. Allstate Ins. Co.*, No. 98-CV-2791, 1999 WL 638243, at *1-2 (S.D.N.Y. Aug. 18, 1999) (referring to "public holiday," "legal holiday," and "national holiday" interchangeably). Thus, the plain meaning of "legal holiday" and "public holiday" appears to be the same.

Plaintiffs cite no authority suggesting that the definition of "legal holiday" is any different than "public holiday" under New York law.[6] Nor do Plaintiffs contend that May 26, 2023, would satisfy any of the criteria to be considered a public or legal holiday: it is not specifically named as a holiday under the General Construction Law (or any other New York law), nor is there any showing that the President of the United States or the Governor of New York declared it to be a holiday.

---

[6] The cases on which Plaintiffs rely, (*see* Ps' Opp. at 5-9), are inapposite. They are primarily out-of-State and out-of-Circuit and do not involve analysis of whether a specific date constitutes a legal holiday, let alone one under New York law. To the extent that Plaintiffs contend that these non-New York courts treat days off as "holidays," those cases involved closures of courthouses and the resulting limitation on a party's ability to file a pleading, not the ability to serve a pleading on another party. The distinction matters because while a filing deadline may implicate the filing party's right to proceed, a service deadline implicates both the filing party's right to proceed and the other party's right to notice. "Filing deadlines are universally conceded to be an appropriate expression of a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within *a specified period of time* and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *R.S.*, 899 F. Supp. 2d at 290 (emphasis in original). Finally, *In re Kennedy's Est.*, 271 N.Y.S. 469 (Sur. Ct. 1934), stands for the uncontested proposition that when a filing deadline falls on a Sunday or holiday, the filing is due on the next day that is neither a Sunday nor a holiday.

That the District was closed on May 26, 2023, is of no moment. Schools and school offices close for myriad reasons, and nobody would regard a snow day or a random day during spring break as a holiday. Nor does the mere proximity to Memorial Day make the closure a holiday. Indeed, the District's school calendar listed May 26, 2023, as a "Snow/Emergency Make-up Day." (ECF No. 18-3.) Presumably, the District did not have as many snow or emergency days as predicted, but had there been more such days than anticipated, the District would have remained open on that date regardless of the upcoming Memorial Day holiday. In short, the District's closure on May 26, 2023, does not alone transform that date into a legal holiday under the applicable regulations. Because May 26, 2023, was not a legal holiday, I would hold, if I had jurisdiction, that Plaintiffs needed to serve the District by that date.[7]

In short, 8 N.Y.C.R.R. § 279.11 specifies Saturday, Sunday and public holidays as the days that do not count toward the forty-day deadline. Yet Plaintiffs would have this Court (and the SRO) interpret "holiday" to mean "any day school is closed." That is simply not a reasonable interpretation – or at the very least not one so obviously correct that it would have been a clear error if the SRO had rejected it.

---

[7] In addition to personally serving the district clerk at the District's offices, Plaintiffs could have tracked down and served "a trustee or member of the board of education[,] . . . the superintendent of schools, or . . . a person who has been designated by the board of education to accept service." 8 N.Y.C.R.R. § 279.4(b); *see also id.* § 275.8(a). Alternatively, knowing that school would be closed on May 26, 2023, or at least being on notice that it might be closed, Plaintiffs could have obtained a waiver of personal service, *see Application of a Student with a Disability*, Appeal No. 24-193 (July 25, 2024), https://www.sro.nysed.gov/decision/2024/24-193 (last visited Jan. 28, 2025) ("State regulations do not preclude a school district and a parent from agreeing to waive personal service and consent to service by an alternate delivery method."); *Application of a Student with a Disability*, Appeal No. 24-190 (July 12, 2024, https://www.sro.nysed.gov/decision/2024/24-190 (last visited Jan. 28, 2025) (to the same effect); *cf. B.C.*, 971 F. Supp. 2d at 366 (plaintiff required to personally serve school district where the petition "failed to set forth any claim that the District had waived personal service").

14

But even if May 26, 2023, were considered a holiday, Plaintiffs' failure to bring the issue to the attention of the SRO at all is fatal to their appeal.  Because Plaintiffs did not exhaust their administrative remedies under the IDEA, depriving the Court of subject matter jurisdiction over Plaintiffs' claims, *see Khanimova*, 2024 WL 2093470, at *3; *B.C.*, 971 F. Supp. 2d at 366-67; *R.S.*, 899 F. Supp. 2d at 291, the case must be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, the District's motion to dismiss the case for lack of subject matter jurisdiction is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 13), and close the case.

**SO ORDERED.**

Dated:  January 30, 2025
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.